# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**TINA M. DOBBINS,**

   **Plaintiff,**

 v.

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

**Civil Action 2:20-cv-2826**
**Judge Sarah D. Morrison**
**Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Plaintiff, Tina M. Dobbins ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 20), the Commissioner's Memorandum in Opposition (ECF No. 25), and the administrative record (ECF No. 16). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed her application for Title II Social Security Disability Insurance benefits on October 9, 2014, alleging that she had been disabled since November 30, 2012. (R. at 315.) On June 6, 2017, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Irma J. Flottman (the "ALJ") held a hearing. (*Id.* at 145–70.) Following the hearing, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act. (*Id.* at 88–113.) The Appeals Council denied Plaintiff's request for review, and Plaintiff filed an action in this Court. (*Id.* at 1–7, 1033–34.) This Court reversed the Commissioner's non-disability finding and remanded the case back to the Administration. (*Id.* at 1035–36.)

The ALJ held a second hearing on December 12, 2019. (R. at 1002–32.) Plaintiff, represented by counsel, appeared and testified. (*Id.*) Vocational expert Ramona Robinson (the "VE") also appeared and testified at the hearing. (*Id.*) On January 31, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 965–1001.) On March 10, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors, Plaintiff contends that the RFC the ALJ assessed is not supported by substantial evidence because the ALJ erred in her consideration and weighing of the opinion evidence. (Pl.'s Statement of Errors 10–16.) Specifically, Plaintiff argues that the ALJ erred in her consideration of the opinions of an examining physical therapist and Plaintiff's treating nurse practitioner. (*Id.*)

## II. ALJ DECISION

On January 31, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 965–1001.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2012, her alleged onset date. (*Id.* at 971.) At step two, the ALJ found that Plaintiff had the severe impairments of degenerative joint disease of both acromioclavicular joints, spondylosis and disc bulging of the lumbar spine, degenerative disc disease of the cervical and thoracic spine, fibromyalgia, and obesity. (*Id.* at 971–76.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 976–77.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing of ladders, ropes, or scaffolds; occasional climbing ramps and stairs, stooping, crouching, and kneeling; frequent balancing; no crawling; avoid all exposure to hazards suck as use of moving machinery and no exposure to unprotected heights.

(*Id.* at 977.) At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff could make a successful adjustment to other work that existed in

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

significant numbers in the national economy. (*Id.* at 991–92.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 992.)

### III. RELEVANT RECORD EVIDENCE

The following summarizes the record evidence relevant to Plaintiff's Statement of Errors.

#### A. Plaintiff's Testimony

Plaintiff testified at the 2017 hearing that she was unable to work because of "daily pain and suffering." (*Id.* at 153.) She confirmed that she was being treated for fibromyalgia, but said that the treatment did not help "very much" with her pain. (*Id.*) She testified that "anything [she tries] to do" makes the pain worse. (*Id.*) She said that she had trouble with her legs and that she could not stand for "very long or walk very far without them giving out." (*Id.* at 154–55.) Plaintiff said that she could generally sit for about twenty minutes at a time, could prepare food in the microwave and dress herself, but that in a typical day she did not "really do a whole lot." (*Id.* at 155–57.) She testified that she had pain in her arms and hands and that she had difficulty holding on to things. (*Id.* at 155–56.) She testified that she took multiple medications for pain and that those medications made her drowsy. (*Id.* at 159–60.) Plaintiff said dealing with the pain was "very depressing." (*Id.* at 162.)

Plaintiff also testified at the 2019 hearing. (R. at 1006–26.) She again said that she dealt with fibromyalgia and chronic pain, among other issues. (*Id.* at 1012–26.) She said that she had tried injections, physical therapy, a TENS unit, medication, and water therapy to help with the pain. (*Id.* at 1012–14.) She said she was no longer able to get the injections in her neck because of swelling. (*Id.* at 1013.) Plaintiff said that she had difficulty walking, that she could sit or stand for about twenty minutes before she got too uncomfortable, and that she spent more time lying down "than [she does] up." (*Id.* at 1017–19.) Plaintiff testified that she could not lift anything heavier than a gallon of milk, that she had difficulty reaching overhead, and that she

sometimes would lose her grip. (*Id.* at 1019.) Plaintiff said that she did not participate in any hobbies, but that she could dress herself, help prepare food, fold laundry, do dishes, and visit extended family occasionally. (*Id.* at 1020–23.) She testified that she sometimes needed to elevate her legs due to swelling, but that she had not needed to do that for about a month. (*Id.* at 1025.) She said that she used a nebulizer for about twenty minutes, three times a day, to treat her breathing issues. (*Id.* at 1025–26.)

**B.     Medical Records**

From 2012 through 2019, Plaintiff complained of neck, back, and leg pain to her providers. (*See, e.g.*, R. 8, 57, 136, 431, 510, 636, 707, 841, 904, 1190, 1235, 1329.) During these visits, Plaintiff sometimes had normal physical exams, but other times physical exams showed tenderness and reduced range of motion. (*See, e.g., id.* at 40, 81–82, 141, 440, 469, 488, 493, 502, 508, 534, 625, 711, 1194, 1250–51, 1347–48, 1375.) Plaintiff repeatedly had imaging done on her neck, back, and pelvis, which generally showed mild or moderate degeneration, stenosis, or similar issues, but were otherwise unremarkable. (*See, e.g., id.* at 16, 46, 116, 430, 461, 516, 530, 606, 647, 694, 742, 760, 1200, 1229–30, 1258, 1332, 1365–66, 1372.) In 2015 and 2017, Plaintiff underwent nerve, which revealed inconsistent results. (*Id.* at 847–48, 869.) Throughout the record, Plaintiff's doctors assessed her with several different diagnoses, including arthralgia of multiple joints; fibromyalgia; myofascial pain; generalized pain; degenerative cervical spinal stenosis; cervicalgia; and spondylosis. (*See, e.g., id.* at 13, 15, 18, 69, 127, 747, 1189, 1279–80.) At some appointments, her providers noted improvement, but others noted continued difficulties, and, on one occasion, indicated that Plaintiff required a cane or walker to ambulate. (*Id.* at 847–75, 907.) Plaintiff sometimes requested more aggressive treatment than her providers found appropriate, like narcotic pain medications or longer time off

work. (*Id.* at 491, 496, 498.) On one occasion, Plaintiff became "angry" and "tearful" when her doctor refused to prescribe her narcotic pain medication. (*Id.* at 499.)

At times, Plaintiff's doctors recommended that she attend physical therapy, but at other times they opined that she would not be able to tolerate physical therapy. (*See, e.g.,* R. at 45, 699, 1189, 1279–80, 1233, 1333.) When Plaintiff did attend therapy, she sometimes reported improvement, but other times reported that the physical therapy made her symptoms worse. (*Id. at* 58, 61, 63, 1247.) Further, her attendance was sporadic; she sometimes arrived late and was ultimately discharged from physical therapy for failure to attend sessions. (*Id.* at 30, 1239, 1253, 1272.)

Plaintiff tried several different treatments for her pain, including medication and injections. (*See, e.g.,* R. at 22–25, 128–29, 700, 780, 881, 888, 898, 942, 1265, 1324–25.) At times, she reported that these treatments improved her symptoms, at other times she reported only short-lasted improvement, and at still other times she reported no improvement. (*Id.* at 45, 707, 884, 902, 924, 938, 1288, 1333.) Plaintiff also reported that she did not experience side effects from the meds. (*Id.* at 903.)

Plaintiff reported to the emergency department or urgent care multiple times complaining of pain or numbness. (*See, e.g.,* R at 339, 437, 451, 467, 555, 613, 636–37, 767, 1222.) On a few occasions, Plaintiff received emergency care for other issues and denied back, leg, or other body pain. (*Id.* at 534, 542, 674.) During some physical exams in the emergency departments, Plaintiff had a normal physical exam; other times Plaintiff had tenderness, decreased range of motion, or other symptoms. (*See, e.g.*, *id.* at 440, 452, 469, 543, 589, 625, 655, 768, 773, 1224.)

In January 2015, Plaintiff underwent a consultative examination. (R. at 517–25.) She reported back pain and pain, nerve damage, tingling and numbness, and a burning sensation in

her arms and legs. (*Id.* at 517.) Her physical exam was generally normal, but she had positive straight-leg-raises and some difficulty getting on and off the exam table. (*Id.* at 520–21.) The examiner opined that Plaintiff was able to lift or carry light objects, and could squat with moderate difficulty. (*Id.* at 520.) The examiner further opined as follows:

> [Plaintiff has] mild limitations with sitting and mild to moderate limitations with standing and walking due to back pain. . . . The claimant may have mild to moderate limitations with lifting and carrying weight due to back pain. There are limitations on bending, stooping, crouching, squatting and so on and the claimant will be able to perform these occasionally due to back pain. There are no manipulative limitations on reaching, handling, feeling, grasping, fingering and the claimant will be able to perform these frequently. There are no relevant visual, communicative or work place environmental limitations.

(*Id.* at 521.)

During another 2015 consultative examination, Plaintiff reported back and neck pain, with pain occasionally radiating down her legs. (R. at 713.) She reported that these symptoms limited her ability to sit, stand, and walk to about 15 minutes at a time. (*Id.*) The physical exam showed that Plaintiff "walked with a stiffened gait and a slight right limp." (*Id.* at 714.) She was only able to sit or stand for about 10 minutes at a time. (*Id.*) A musculoskeletal exam was generally unremarkable, but she had a constant spasm in back. (*Id.* at 715–16.) The examiner summarized his findings as follows:

> I found no residual quantifiable functional impairment regarding claimant's hand complaints or fatigue complaints in the examination today. In view of her back problems, compounded by her problem of being overweight (BMI equals 34), she would probably be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, liftings, and carrying. She would probably be able to perform physical activities involving handling objects, speaking, hearing, following directions, and travel.

(R. at 716–17.)

### C. Rhonda Forestal, P.T.

In January 2017, Rhonda Forestal, P.T., completed a physical capacity evaluation. (R. at 788–89.) Shawn A. Bonner, M.D., Plaintiff's treating physician, also signed off on the evaluation. (*Id.*) In that evaluation, Ms. Forestal opined that Plaintiff could stand for ten minutes at a time, walk for five minutes at a time, and sit for twenty minutes at a time. (*Id.* at 788.) She further opined that Plaintiff could perform no lifting; could not use her right hand for repetitive grasping, pushing, pulling, or fine manipulation; could not reach above the shoulder level; and could never bend, squat, crawl, climb stairs, or climb ladders. (*Id.* at 788–89.) Ms. Forestal also indicated that Plaintiff's conditions were likely to get worse with job stress. (*Id.* at 789.)

### D. Anna Purkey, C.N.P.

Plaintiff saw Anna Purkey, C.N.P., from August 2018 through December 2019. (*See, e.g.,* R. at 1375, 1388–1401, 1412.) At these appointments, Ms. Purkey noted that Plaintiff was experiencing back and neck pain, and that Plaintiff requested pain medication. (*Id.*) She also observed that Plaintiff had a mass on her neck. (*Id.*). In progress notes, Ms. Purkey listed several diagnoses for Plaintiff including fibromyalgia, cervicalgia, and sciatica. (*Id.*)

In December 2019, Ms. Purkey wrote a letter on Plaintiff's behalf in which she wrote that Plaintiff had "experienced a multitude of problems over this past year . . . she has been unable to work due to the pain and fatigue." (*Id.* at 1412, 1416.) Ms. Purkey listed several diagnoses for Plaintiff including Lordosis, Cervicalgia, Lymphedema, Chronic pain, a neck mass, and Addison's. (*Id.*) Ms. Purkey opined that Plaintiff could occasionally lift up to five pounds, and never lift more than twenty pounds; that she could occasionally perform reaching, fingering, and handling bilaterally; that she could stand for four hours, walk for three hours, and sit for four hours in an eight-hour work day; that she could occasionally bend and squat, but never crawl,

8

climb steps, or climb ladders. (*Id.* at 1414–15.) Ms. Purkey indicated that Plaintiff's condition had persisted since June 2018 and that her conditions would likely worsen with job stress. (1415–16.) Ms. Purkey opined that Plaintiff would generally be moderately limited in all mental functional capacity areas. (*Id.* at 1417–19.) Finally, Ms. Purkey opined that Plaintiff would likely have attendance problems due to both her conditions and due to medication side effects. (*Id.* at 1416, 1419.)

## IV.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the

substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As set forth above, Plaintiff challenges the ALJ's consideration and weighing of (1) a physical capacity evaluation signed by an examining physical therapist and Plaintiff's treating physician and (2) a letter from Plaintiff's treating nurse practitioner. The undersigned considers these contentions of errors in turn.

### A. The ALJ's Consideration of Ms. Forestal and Mr. Bonner's Opinion

Plaintiff argues that the ALJ erred in discounting the physical capacity evaluation completed by Rhonda Forestal, P.T. (Pl.'s Statement of Errors 10–16, ECF No. 20.) As a threshold matter, this Court has concluded that the evaluation was also signed by Dr. Shawn Bonner, Plaintiff's treating physician. *See Dobbins v. Comm'r of Soc. Sec.*, No. 2:18-CV-725, 2019 WL 1054552, at *5 (S.D. Ohio Mar. 6, 2019), *report and recommendation adopted*, No. 2:18-CV-725, 2019 WL 1455476 (S.D. Ohio Apr. 2, 2019). When a treating source co-signs an opinion, that opinion should be evaluated as a treating source opinion. *See Hargett v. Comm'r of Soc. Sec.,* 964 F.3d 546, 553 (6th Cir. 2020) ("[A] doctor's cosignature indicates at a minimum that the doctor agrees with the other source's opinion. . . . [A] treating physician may adopt or ratify the opinion of a non-treating source by providing a signature.").

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id.* Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550

(6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ offered the following discussion of Ms. Forestal and Mr. Bonner's opinion:

> The undersigned has considered the opinion of physical therapist Rhonda Forestal and a doctor presumed to be Dr. Shawn Bonner and the undersigned gives their opinions little weight. A form was completed by them indicating that the claimant

could stand for less than two hours total in an eight-hour day, walk for less than two hours total, and sit for three hours total. This form indicated the claimant could stand for ten minutes at a time, walk for five minutes at a time, and sit for twenty minutes at a time. This form indicated that the claimant could lift no weight. They indicated the claimant could not use her right hand repetitively to simple grasp, push, pull, or fine manipulate. They found she could do repetitive foot controls. They claimed she was completely incapable of bending, squatting, crawling, and climbing steps and ladders. They claimed she was unable to reach above shoulder level. They indicated she could not do "activity" because of pain and stability and did not complete most activities attempted.

This opinion was the basis for the court remand, as the vacated decision weighed this opinion in part based on it being an opinion by a physical therapist. As noted above, there was also an illegible signature on this form that the District Court has concluded belongs to Dr. Shawn Bonner. Regardless of who completed this form, there is still no evidence of examination findings, muscle testing, or radiologic studies to support this opinion. This opinion provided extreme limitations that were completely unsupported by the record. Dr. Bonner's own treatment records repeatedly indicated the claimant had normal gait, strength, and coordination. Dr. Bonner's physical examination findings of the claimant were basically always completely normal. The mild objective findings in the record do not support the limitations in this opinion and do not provide a basis for this opinion.

In particular, there is no indication that the claimant was completely incapable of listing any weight. Such a restriction would mean that the claimant has complete loss of use of her upper extremities and was incapable of lifting even incidental weight, such as the weight of a pen or a piece of paper. Even the claimant does not allege that she is completely incapable of lifting any weight whatsoever. The claimant repeatedly indicated that she could list ten pounds or a gallon of milk. She could also perform a variety of daily activities that would require at least some degree of lifting, such as dress and bathe herself, wash dishes, and fold laundry. The statement that she was incapable of lifting any weight ever is so contrary to the evidence that it severely undermines the entirety of this opinion. Similarly, while the claimant testified to having some symptoms reaching above

(R. 22–23.)

The undersigned finds no error with the ALJ's consideration and assessment of Ms. Forestal and Dr. Bonner's opinion. The ALJ properly declined to afford the opinion controlling weight and articulated good reasons for assigning the opinion "little weight." The ALJ reasonably rejected the extreme opinion as unsupported by either Dr. Bonner's own treatment notes and examination findings or the objective testing results. *See* 20 C.F.R. §§ 404.1527(c)(2),

13

416.927(c)(2) (providing that a treating source opinion will be given controlling weight if and only if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record"). The obvious inconsistencies the ALJ outlined in her discussion of this opinion and also elsewhere in her opinion provide substantial evidence in support of the her decision to reject Ms. Forestal and Dr. Bonner's opinion. *See* S.S.R. 96-2p, 1996 WL 374188 at *3; (*See also, e.g.*, R. at 522–25 (2015 consultative examination finding that Plaintiff had a normal range of motion in shoulders, arms, and hands); R. at 1189 (noting that Plaintiff's arm weakness was "most likely" due to deconditioning); R. at 790– 802 (Dr. Bonner's progress notes reflecting that Plaintiff experienced "no muscle weakness," "no muscle aches," and presented with a normal gait and muscle tone).)

Because the ALJ provided good reasons supported by substantial evidence for assigning Ms. Forestal and Dr. Bonner's opinion little weight, the undersigned concludes that the ALJ did not violate the treating physician rule or otherwise err in the consideration and weighing of this opinion. It is therefore **RECOMMENDED** that this contention of error be **OVERRULED**.

**B.      The ALJ's Consideration of the Nurse Practitioner Purkey's Opinion**

Plaintiff next argues that the ALJ should have given greater weight to the opinion of her treating nurse practitioner, Ms. Anna Purkey, C.N.P. (Pl.'s Statement of Errors 11–16, ECF No. 20.) In Plaintiff's view, the ALJ's reasons for discounting Ms. Purkey's opinion are not supported by substantial evidence. (*Id.*) The undersigned disagrees.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(b). The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

14

Nurse practitioners, like Ms. Purkey, however, are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(a), 416.913(a); SSR 06–03P, 2006 WL 2329939, at *2; *see also Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 541 (6th Cir. 2007) (explaining that "an ALJ has discretion to determine the proper weight to accord opinions from "other sources" such as nurse practitioner"). Although the ALJ must consider opinions from "other sources" and "generally should explain the weight given," "other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) (citation omitted); 20 C.F.R. § 416.927(f)(2) (providing that the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . . .") The ALJ considers "other source" opinions using the same factors for weighing a medical opinion from an acceptable medical source, but "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 416.927(f)(1). The relevant factors include the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 416.927(c)(1)–(6).

> Here, the ALJ offered the following discussion of Ms. Purkey's opinion:
>
> The undersigned has considered the opinion of nurse Anna Purkey as an "other source" opinion pursuant to 20 CFR 404.1527 and 416.927 and give this opinion little weight. She wrote a conclusory statement that the claimant was "unable to work due to the pain and fatigue" that she was having. The ultimate issue of determining disability is a finding reserved for the Commissioner. Ms. Purkey then complete a more specific form indicat[ing] that the claimant could rarely lift and carry 20 pounds and occasionally five pounds. She indicated the claimant could

occasionally reach, handle, and finger. She claimed the claimant could stand for four hours total in an eight-hour day, walk for three hours total, and sit for four hours total. She indicated the claimant could use her feet for repetitive movements to operate foot controls. She indicated the claimant could never crawl, climb stairs, or climb ladders. She indicated the claimant could occasionally crouch, squat, and bend. She claimed the claimant could not reach over her shoulder. She claimed the claimant's condition would likely deteriorate if placed under stress, suck as with working. She claimed the claimant would be absent from work two or more days a month.

Ms. Purkey also completed a mental health form indicating the claimant had moderate limitations related to social interaction, moderate to marked with sustained concentration and persistence, and mild to moderate limitations with adaptation. She again indicated the claimant would be absent [from] work two or more days a week and her condition would deteriorate if placed under stress.

Ms. Purkey has been treat[ing] the [claimant] over the past year. However, her treatment records of the claimant are fairly vague, often not documenting any examination findings. There is little in her examination notes of the claimant to explain what Ms. Purkey was basing her opinion on and she did not provide detailed explanations to support the limitations she gave. Furthermore, her assertion that these limitations were the result of "neck mass, Addison's disease, lordosis/sciatica" were not supported by the record. There is no indication that the claimant's Addison's disease and neck mass would result in any exertional, manipulative, or postural limitations and her spinal imaging did not show signs of significant lordosis or sciatica that would explain her symptoms. In addition, like the physical therapist and Dr. Bonner's opinion, there is no explanation about why the claimant's physical condition would deteriorate due to stress or why she could not reach overhead.

Additionally, Ms. Purkey provided absolutely no mental health related treatment to the claimant and there is minimal support for the mental limitations given. In addition, the mental health form defined the terms "mild," "moderate," "marked," and "extreme" in unusual ways contrary to Social Security laws and regulations and the DSM V. The form defined "mild" as "unable to function in this area less than ten percent of the work day or work week.["] "Moderate" was defined as unable to function eleven to twenty-five percent, "marked" as "twenty-six to fifty percent," and "extreme" as "over fifty percent." Such definitions are deceptive and the form itself carried a heavy basis implying even mild symptoms result in a significant loss of functioning. For instance, typically vocational experts indicate being off-task for ten percent of the workday would preclude all work. However, in order for a mental health impairment to be severe, it has to have a moderate limitation. Thus, according to the definitions of "moderate" used on this form, they would automatically be disabled. Such language is contradictory [to] the Social Security laws and regulations. Thus, this opinion is given little weight.

(R. at 989–90.)

The undersigned finds no error with the ALJ's consideration and weighing of Ms. Purkey's opinion. The ALJ properly considered that Ms. Purkey was an other source and also the length and nature of their treatment relationship and reasonably discounted her opinion based upon the lack of supportability from Ms. Purkey's examination notes and the demonstrated inconsistencies between Ms. Purkey's opinions and the record evidence. The ALJ also correctly pointed out that Ms. Purkey's conclusory opinion that Plaintiff cannot work is not entitled to deference and is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511. Significantly, the ALJ's opinion makes clear the bases for Plaintiff's RFC finding, including Plaintiff's conservative treatment history, examination findings, objective findings on imaging and testing, and a thorough discussion opinion evidence and Plaintiff's allegations. In short, the ALJ reasonably weighed Ms. Purkey's opinion, and substantial evidence supports the ALJ's RFC determination. For these reasons, it **RECOMMENDED** that this contention of error be **OVERRULED**.

## VI. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is

17

made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE